Thank you, Your Honor. May it please the Court, Andrew Schroeder, the Petitioner in this case, the client's witness. In our briefs, we've raised three arguments. The first, challenging whether there is substantial evidence to support the MSP's decision on the first charge in this case. The second, challenging the method used by the Board to assess the maximum reasonable penalty in this case. And the third, challenging the penalty itself. I would like to begin with the second point today, which we see as the key legal issue in this case. In Lachance v. Duvall, this Court held that when the Board sustains fewer than all of an agency's charges, and the record does not indicate that the Board would have imposed a lesser penalty on the sustained conduct, the Board must independently balance the Douglas factors to determine the maximum reasonable penalty. In this case, the Board sustained only one of four charges that the agency brought against Agent Timmons, and the agency gave no indication that it would have imposed a lesser penalty. Accordingly, Lachance squarely applied, and the Board was required to independently balance the Douglas factors. A plain reading of the Board's opinion makes clear that it failed to do so. Well, wait. On page 19, the Board says, we find the deciding official properly considered the factors of the Douglas, and that the penalty of removal is reasonable in the light of the sustained charge. Yes, Your Honor. That's wrong. Well, the first part of it is wrong, Your Honor. I would respectfully submit, in that it says, we find the deciding official properly considered the factors set forth in Douglas. The emphasis in that sentence, as I've just read, is on my own, but the point is clear. The Board was not weighing the Douglas factors as it was required to do, but instead assessing how the deciding official had done it himself. What about the next page, page 20? Okay. The sentence where they go on to discuss certain factors, they're considering Ellis' status sentence. Why is that not an evaluation? I think you're referring to the one that starts out by, for example, noticing his status as a law enforcement officer. Essentially, the last sentence of that section. Just right before citation. Okay. I would say a couple things. The first thing is, that's one sentence in many, eight or nine, depending on how you count them, in which the Board is clearly looking over the shoulders of the deciding official, emphasizing what the deciding official looked at, emphasizing what he considered, so it's hard to tell whether that is just. They're supposed to do that, right? They're supposed to decide the deciding official was reasonable, and then they're supposed to go on and make their own reasonable determination. They're supposed to do both, right? Well, in the LaChanze situation, the Board itself is supposed to independently balance and analyze. That's the second part. Well. They're both supposed to focus on what the deciding official did, whether that was reasonable, and then in the LaChanze situation, which this is, they're supposed to go on themselves and find that it was reasonable. And they did both, right? I would say they only did one. I mean, I think in one, they're determining, they're making some sense. How can you read that last sentence? They're considering something that's anything but their independent evaluation. Are you saying that in the LaChanze situation, we require them to go through each judgment and say that they weigh in the paper of removal as the maximum reasonable penalty? No, Your Honor. I don't think they have to. All we have to do is discern from this opinion that they have independently come to the conclusion that the penalty is the maximum reasonable penalty. I don't think that's correct. I'm sorry. In the standard, though, not all of the charges are sustained. The board, if the agency says it, still would have done it anyway. The board has to independently determine whether that's the maximum reasonable penalty. I agree that that's the ultimate conclusion, but the method is the board has to balance the factors itself. Here, it's clearly evaluated. So you are saying that the board has to independently go through all the specific Douglas factors that are relevant and say why that reaches the maximum reasonable penalty? Yes, I am saying it has to do that. Whether it has to explicitly state in the opinion that it did that is a different question. What I'm saying is it could, for example, say we have independently evaluated all of the relevant factors. We think the relevant factors are 1, 5, 7, and 9. The evidence on factor 1 says X, so on and so forth. The evidence on factor 3 says X. Here's how we view that evidence. Here, there's just no indication that it did that. Getting back to that conclusion. Except they know what they are, they looked at what the deciding official did, and they suggested that the deciding official did it right, and then they say independently we find that it doesn't exceed the tolerable limits that are original on us. I think the second part of that is I think they're imposing a burden on them to go through the Douglas factors in its opinion that's not present in our case law. I would respectfully disagree with that. I think it's clear that what they're doing here is looking over the shoulders of its side. We're reading this opinion differently, so let's just go with the way I'm reading it, which is they have evidence that they have determined independently that this is the maximum reasonable penalty. What I think you're arguing is they have to show their work by specifically discussing Douglas factors. If that's what you're arguing, then where is that in our law? I think it is in Lachance. It's in Williams. It's in Moreno. I mean, in Williams or Moreno or both, you know, the judge that basically says the quote language is very similar to a lot of this language that the board used in this case where they're saying we find that the deciding official reasonably balanced the Douglas factors, and they're making it clear that is not right. That's not the standard. If this discussion had ended on page 20 before they considered this sentence and it didn't also have the stuff we talked about earlier where they seem to also suggest that they agree with this penalty, you might have an argument. And sure, it could be more explicit. This last sentence is their independent judgment of the appellate status of a law enforcement officer, all the facts of this case, and the conclusion that the removal doesn't exceed the tolerable limits. That's their conclusion under the Douglas factors. I would, again, say that it is a conclusion. I would say that the first thing it's required. Let me ask you this. If we see that that is a conclusion, that evidence is their intent to analyze the Douglas factors, then you lose, right? If you believe that they independently weighed the Douglas factors, if that sentence indicates to you that they did that independently, then under LeChance, yes. I mean, that's going to be a problem for us. But what I would say is a couple of things with regard to that sentence. Number one, the first thing they referred to is law enforcement. That's something the deciding official emphasized. Then they referred to affidavits. I mean, is it natural that they looked at stuff the deciding official did? Because they went through and said, here, the deciding official looked at all the relevant Douglas factors, which they have to do because if the deciding official didn't look at the relevant Douglas factors, they don't even get to their view of whether it's a maximum reasonable penalty. So they're aware of the factors. And then they say, we find also that it's a maximum reasonable penalty. I disagree. I think the emphasis, and I'm sorry to keep harping on this emphasis. No, I understand. You're making your best case for your client, which is most of their analysis is about the deciding official. They don't go into great detail of their reasoning as to why they independently do it. But this is up to us basically to read this decision and think they've done enough. And if that last sentence, coupled with the other couple of sentences, with also the fact that they properly cited the right standard, and they made the initial finding that the agency would have done this, then it's up to us to determine whether we think that they applied the right standard or not. I would submit, though, respectfully, number one, there's a lot of evidence here that they are looking over the shoulder of the deciding official. And I want to be clear that that's. Here's what you're not separating out, is that they have to do that first before they even get to their job of deciding whether it's the maximum reasonable penalty. Because if they haven't gone through all of that stuff about the deciding official looked at all these factors, and just said, we think this is good enough, you would be up here arguing that they failed to determine whether the deciding official in the first instance applied the Douglas factors. Well, what I would argue is this. There is no, when I read the chance, I see it as the key difference, or one of the key differences between the sort of standard Douglas argument is, when you look at Douglas, that's the first prize. Did the deciding official properly weigh the factors? That's standard Douglas. That is, the agency proved charges, made two charges, proved two charges. What chance says, once the agency doesn't prove a charge, that's lost. If instead of the sentence they had, they'd gone through all, they have that extensive discussion of the deciding official's Douglas analysis, and they read the sentence that said, we have also independently looked at the Douglas factors and agreed with the deciding official. Is that good enough? If they're, yeah, I mean, I would say that is better. No doubt that is better. And I'm not saying, again, that they have to trot out all 12 factors, but I'm saying there has to, the standard is independent, independently balanced. You know, what evidence is there here that they've independently balanced? Think about the things they could have done. They could have cited the Douglas factors. They could have cited evidence under the Douglas factors. It doesn't mean they have to trot out all of them, but they could have trotted out some of them. The other thing I would say here is I would make a distinction between, you know, looking at the agency's evidence, which clearly they would have to do if they're independently doing that, looking at evidence under various factors, and I would distinguish that from the ultimate decision that the agency made. That's deference, and I don't believe that that's le chance. The other thing I would point out is in this case, the board, the real danger of le chance is that the correspondence, as le chance calls it, between the penalty and the specific reasons therefore is lost. Here the board is citing to evidence on specifications that the board itself did not sustain. I would submit to you that part of the reason they're doing that is because they're looking over the shoulder of the deciding official. The deciding official was right to do it because he was sustaining those particular incidents. Now the board has rejected that, and then it goes back, and it looks over the shoulder of the deciding official, and it doesn't catch that. That's one of the reasons it has to do its own analysis, because it has to make sure that the penalty that it's saying is reasonable is actually tied to the conduct that it itself has sustained. That's an incredible thing. We're in the board's decision. Are they discussing aspects of the charges that weren't sustained in connection with the public file? Sure. That's footnote 6. Footnote 6. Yes, and that's at page 19 of the board's decision, and that's appendix 19. The board is referring there to how certain supervisors had testified that they changed the scheduling for age and tendons based on the fact that he made certain females uncomfortable. One of the allegations it looks at is an allegation made by Jennifer Parra. Her allegations were alleged and made in Specification 8. They were not sustained by the board. The board also refers to allegations made by Sharon Rogers. The agency did not even charge that conduct. She recanted or at least backtracked on those allegations. The board then says it's possible any other female employees. There's definitely specifications charged with him making other female employees uncomfortable. There are specifications. Obviously, we challenge those. There are a lot that were not substantiated and a lot that there's evidence in the record that he made people uncomfortable. Well, did he make them uncomfortable? Was that ever specified? Was it based on all the rumors and gossip about his adult online business? I would submit to you this is why the board has to independently do this. It's got to go back and tie the conduct to the penalty. DHS argues at page 41 in their brief that LaChance requires an abusive discretion standard to be applied. Do you agree with that? This court ultimately reviews for abusive discretion, yes. But LaChance is clear on the legal issue that the board has to independently balance the governance factors. And that's what we're saying it didn't do. This is a legal error. I can see I'm into my rebuttal time. Can I just ask you about that? We said about JP, but there was a specification sustained with regard to SR. Yes, Sharon Rogers. But what's cited is an allegation, I believe, regarding an incident in which she said that she was being stalked by 18 tenants. And then she said she told the supervisor about that. The supervisor did not corroborate that. The answer to the question is yes, there is one. But that particular reference is to an incident that was not sustained. Okay, thank you. We'll give you two minutes. Okay, thank you. May it please the court, on behalf of the Department of Homeland Security, I'm asking that this court affirm the board's decision. Why did Kevin's name with the Department of Homeland Security give permission to a Border Patrol agent to conduct an adult entertainment business outside? That decision is not fully developed in the record. But it is, he was given permission to do that, provided. I think the memorandum approving it was more concerned with? Asking for trouble. Potentially, yes. I'd like to start, if I can, just with the factual discussion that the panel just had with my counsel across the aisle. Petitioner is asserting that the board relied on evidence that was part of charges that were not sustained. That's not accurate. I'm going to run through some evidence in the record for the court's consideration. First of all, yes, S.R. is Sharon Rogers. She did not recant that testimony. Appendix 398 talks about how she does not recall reporting it to a supervisor. She is not discounting that the conduct occurred. The implication is that somebody else reported it to the supervisor. She's not recounting the concerns about stalking. But the complaining witnesses, the complaining employees who were involved in the conduct sustained, were uncomfortable. And that's reflected in the record. Portwood is uncomfortable. That's at 262, 349 to 353, 1070, 7092. Rogers is uncomfortable, concerned about possible stalking, 368 to 372, 398. Fierro goes to great lengths to avoid being in the same place as Mr. Tones. That's 506 to 510, 1116 to 1118. Ramirez describes leering in a sexually aggressive manner, 268, 359 to 61. Supervisor Harrell corroborates Portwood's discomfort. That's 427 to 430. What about the point, though, that I think he was citing from that sixth board? JP, for example. There's no charge sustained at any level, out of effect, about JP. How is it appropriate for the board to factor that into this analysis? Well, the board is—the supervisor's testimony that the supervisor needed to schedule— the supervisor testified, Harrell testified, that he needed to schedule Mr. Timmons to avoid contact with SR, Sharon Rogers, and Ms. Parra, whose allegations were not sustained, but also endeavored not to schedule him with any employees, any female employees. That remains a concern, and it remains a factual concern that the board was within its discretion to factor in its analysis under Lucien's and Douglas'. So it's a concern about the assignment of Mr. Timmons with the female employees, even if there's no particular charge sustained associated with those specific employees? Correct. And even with regards to Ms. Parra, yes, there was a specification that concerns Parra that was not ultimately sustained, as well as specifications that was reversed. But her discomfort with working with Mr. Timmons still stands, right? It's still something that the supervisor was willing and interested in protecting. To come to the independent review chance point, I think the best you have, maybe all you have, is the sentence, the considering sentence at page 20. And even that seems to stress keeping in mind the employee agency's primary discretion in assessing penalties. How can I fairly read this one sentence which has embedded in it the discretion, the primary discretion? How can I read that as a truly independent evaluation by the board? Because overarching in this independent evaluation is the abuse of discretion standard, right? The chance is clear that it is not for the board to independently step into the shoes of the agency and decide what penalty is appropriate to take over that role. The board sits there just to determine whether or not the penalty that the agency imposed is still reasonable in light of the lesser sustained charges, right? And when the agency does not indicate an intention to consider something a lesser penalty, then the board is also considering what is the maximum reasonable penalty. I think on this record, we have an employee who has a persistent pattern of unprofessional conduct with female employees, was verbally aggressive with a supervisor, admits to being too aggressive with his female co-workers, and as the deciding official noted, did not admit his misconduct at any point up and through the oral reply before he was removed from his service. I think it belies reason to suggest that removal of this employee is patently unreasonable. Is Lechance the case where the board initially had, at the board stage, had said we do have the authority to do a de novo review when not all the charges are sustained? Do you recall? I recall that situation happening. I don't know if it was in Lechance or some other case in OPM, where the board agreed that the board doesn't get to do an independent de novo evaluation of the Douglas factors. They have to do it under the guise of this maximum reasonable penalty, which is based upon the fact that the agency officials are in the best position to determine what the appropriate penalty is. Yeah. As I said, I'm not sure if it's Lechance either. But in terms of the parties' briefings in this case, Lechance and we also rely on Hays. Let me ask you, if we didn't have this considering sentence, it would be a little bit more problematic, wouldn't it? Absolutely. But we do, right? I guess my view is, why shouldn't we require a little bit more from the board so that we are more comfortable that they've done the right review under Lechance than just a pretty, I'm not going to call it cursory, because it actually hits on a number of points, but it doesn't specifically reference Douglas. It doesn't really indicate. I mean, as your opposing counsel said, they do have some obligation, and it's a little apart from this. It's certainly an inference to think that, you know, these were two board members who said there, and I thought, yeah, that that was a factor that we agreed at that. And under our view, it could be a factual reasonable penalty. I think your Honor. I mean, is the discretion standard. I think it's the discretion standard, but I think it's also the factual record in this case, right? This is not the kind of case where the specifications that were not sustained, you know, materially altered the brunt of the considerations, right? The mitigating circumstances, the aggravating circumstances. Well, it's not the specifications that weren't sustained. It's the other charges that weren't sustained. The other charges, right. It doesn't matter that some of the specifications under this charge weren't sustained. It's whether the other charges that weren't sustained would alter the penalty. Right. And your Honor raises a good point in that the deciding official in considering the penalty of removal also considered the conduct underlying the lack of candor charge, right? Concerns injured by Giglio and concerns about credibility, if Mr. Titton should ever have to testify in court in connection with his work, right? If there was a sustained lack of candor charge. That lack of candor charge did not survive through to the board's decision, and the board, rightly so, did not consider that lack of candor conduct in assessing the penalty of removal.  Petitioner makes a lot, puts a lot of attention on whether or not the board's decision diverged, uses the word diverged, diverged from the deciding official's decision. And says, well, it can't be independent if there's no diversion. There was diversion, right? As I mentioned, the board did not consider the lack of candor conduct in reassessing the removal. They also didn't consider, or they did consider, the difficulty in scheduling Mr. Timmons. I mean, you have a male employee who can't schedule, you're endeavoring not to schedule any female co-workers, right? If that, if the agency is not within its discretion to determine that that's not efficient for service, I'm not sure what is. In Williams, I think you recognize, we said that if the board's analysis of this type of chance situation amounted to nothing more than deferential review of this deciding official's analysis, then we have to revamp, isn't that right? That's correct. So if that's how I read that one sentence, I have to revamp. If your honor sees that there's deference there, but we would submit there's no language of deference, right? The board was, as Judge Houston noted earlier, responsible for looking at whether or not the deciding official in the first instance considered the Douglas analysis. Let me ask you this, because one of the interesting parts of the facts here, I think, are because the board, I think, didn't have a quorum for a certain amount of time, and Mr. Timmons went back to work, I think, for a significant amount of time. And it's not clear to me that the board considered, potentially, I don't know, as a mitigating factor the five, six, seven subsequent years where there was maybe no complaints about his work. Should that factor into the analysis of whether we should remand for a clearly independent evaluation? Well, to the extent there was, I don't know if there was, but to the extent there was an opportunity to offer additional evidence about his conduct once he returned to work, petitioner did not do so, right? So that evidence is not in the record. And I think the court's role at this point is to decide whether or not the board, acting on the record in front of it, which was developed by the parties below, supports the charges sustained and the penalty of remodeled. Conduct thereafter, I think, is outside the record. If the panel has no further questions. Okay. Thank you. Mr. Schroeder. Thank you. First of all, I just want to say that, obviously, he was not removed again from his position until early last year. At that point, we were before this court. We looked into that issue. You know, this court's authority on supplementing the record at this level is not necessarily favorable. If this is remanded, we would definitely seek to reopen the record and have the board consider his, you know, it essentially almost doubles his tenure with the agency, having been reinstated for those years. The first thing I want to respond to is, with regard to that footnote and what, who is being rescheduled to avoid being- But the footnote doesn't relate to the board's determination of reasonableness. Independent determination relates to the deciding official. Well, no. That's the one spot where perhaps the board did consider something independent. And what I'm saying is that the board relied on evidence that it hadn't sustained. I just wanted to respond to say, you know, it's unclear exactly who the supervisor is referring to. That's at Appendix 428 and 429, Supervisor Harrell's discussion of people he's referring to. It all relates to the deciding official's reasonableness rather than the board's independent determination. I disagree. That is our possession. That's our understanding. The placement of the footnote isn't in relation to the board's independent determination. I disagree with that. The second thing I would say is, Judge Hughes, you referred to, I believe, the statement that the board considered that the deciding official would have made the same decision on the basis of the one charge. I just think it's important to wonder how much credit to give that statement, given the fact that when he made the statement, it was based on 15 specifications. Now there are six. I just wanted to make that point clear. And the last thing I would say is— That's not for the board. I mean, that's really fascinating. The deciding official says on the record that I would still have— I know they all put this in now, pro forma, enter the decisions, but that's the way it works. If the board agreed with that, there's a factual basis for us to disagree with that. Well, I mean, it's not clear if there's testimony to that effect, because it's not in the decision letter. He only refers to a charge there. There's some testimony—I believe this is Appendix 1528. It's like the last question the agency counsel asks. She says, well, what would you have done with the same specifications? He—or excuse me, fewer specifications. He interprets that essentially as the charge question again. He doesn't really answer the question. Did you make this argument in the brief? I don't recall. Maybe you did. In the brief? Did you make this argument about— That there were fewer specifications? Yes. That's highlighted in the number of questions. No, about the deciding official, the testimony you're talking about. Oh, no, because I'm not sure— Well, you did make it clear, though. Well, I think it's just a point about the board's interpretation. It's not independent ground. It's just a question of how much to credit that statement. That's all. I can see you in overtime. Thank you. Thank you. Thank both counsel and cases. And with that, we'll close our session.